BJORNSON, INC. v. MID-CONTINENT CASUALTY COMPANY.

168 N. W. (2d) 677.

May 29, 1969—No. 41447.

*Hugo V. Olson* and *Stiening, Olson, Thysell & Gjevre,* for appellant.
*James D. Cahill,* and *Garrity, Cahill, Gunhus, Streed & Grinnell,* for respondent.

Heard before Knutson, C. J., and Nelson, Murphy, Otis, and Rogosheske, JJ.

PER CURIAM.

This is an action on a general insurance agent's contract to recover from Mid-Continent Casualty Company, an automobile public liability insurer, money claimed to be due in the course of their dealings. The trial court found plaintiff general agent, Bjornson, Inc., not entitled to recover. The principal legal issue, as expressed by plaintiff's brief, is:

"May an insurance company which accepts promissory installment note providing for installment payments of premium on an insurance policy and which collects all payments on said note at its own principal office and which has in its exclusive possession all information relating to payments made on said note, charge its general agent, who has not endorsed or guaranteed such note, with the balance due thereon either upon cancellation of the policy or non-payment of the note?"

We find some difficulty in relating this issue to the record. It appears that the dispute arises out of defendant's peculiar accounting procedures in setting up charges for premiums. The premiums were for public liability insurance on trucking vehicles and, accordingly, were in substantial amounts. As nearly as we can gather from the record, the following procedure was practiced in placing the business with the insurance company. Subagents of plaintiff general agent would solicit business from truckers and, as an inducement to the purchaser, would offer an advantage to the insured trucker by giving him an opportunity to pay the substantial annual premium in periodic installments. In the sale of such a policy, the subagent would collect from the insured a downpayment which would usually pay for one-sixth of the annual premium or coverage for about 2 months. The balance of the annual premium would be financed over a 10-month period in monthly installments which would be represented by an "installment premium note." This note would provide that the company would be paid only to the extent of the earned premium, plus interest and service charge. When the note was signed, a copy was sent to plaintiff general agent. The downpayment and original note were sent to the insurer. Upon receipt of the downpayment and note, the transaction was entered upon the insurer's books as if the full premium had been paid. The note would then be turned over to the insurance company's installment note department, which had the responsibility of collecting the installments as they became due. The company did not permit coverage to extend beyond the period for which the installment payments were made. It appears that after these policies had been in force for several months some of them were canceled, either because of defaults in the payment of the premium notes or because the insurer felt that its acci-

dent experience with the insured required cancellation. When the insuring agreement was terminated for one of these reasons, the insurance company would credit the earned premium against that portion of the annual premium which had not been earned. When this was done, the company would transmit to the general agent a notice of credit for the unearned premium. It appears that these credits for unearned premiums during the period involved in this lawsuit amounted to approximately $12,000. Why this particular accounting ritual was followed is not explained. The company asserts that the credit for the unearned premium was a mere accounting practice and is without substance or reality as it relates to an actual credit or debit in the accounts of the parties.

We have difficulty in understanding the basis of the general agent's claim since, under the terms of the note in each instance, the insured was entitled to a refund of any unearned premium. It is undisputed that the unearned premium to which the entry relates represented neither money advanced by the general agent nor money received by the insurance company. Nor is it claimed that it involves commissions due from the company to the general agent or funds which the agent advanced towards payment of the premium. Nevertheless, the general agent claims it is entitled to the amount represented by the so-called credits to its account.

In its amended complaint, plaintiff alleges:

"That the plaintiff has heretofore and during the term of the contract, paid to the defendant various sums of money on policies where the full premium was paid and which have subsequently been cancelled and under the terms of the policy and the contract in effect between the parties, the plaintiff is entitled to a refund of unearned premium. That the records of the plaintiff reveal that such refunds which the plaintiff is entitled to are in the approximate sum of $12,000.00."

It appears from the record that the trial court had some difficulty in understanding the nature of plaintiff's claims and, in amended findings, concluded:

"* * * There was never at any time a charge back to the plaintiff of the amount of money due on the installment note but only a charge back to the extent of credit previously given for unearned premium."

We fail to find in the record that the credits claimed by plaintiff have any factual basis. There is some suggestion that plaintiff may have sustained some loss because of the negligent and careless dealings of one or more of its subagents. The record, however, would not support a finding which

would place liability for such loss, if there was one, upon the insurer. The trial court found:

"That the plaintiff has not proven any damage to have proximately resulted by defendant's account procedures and practices which had previously been established between the plaintiff and defendant, plaintiff having charged the note charge back for unearned premium back on the monthly accounts current of the plaintiff with plaintiff's respective local agents. That the selection of sub-agents was made solely by plaintiff and if any loss accrued it resulted from its selection of agents of doubtful financial integrity."

The trial court further found:

"That plaintiff through its sub-agents and plaintiff's sub-agents did transmit moneys and/or credits to certain of the 11 cancelled out policy holders but did so without authority of the defendant and contrary to the custom and practice established over the previous 16 months by and between the defendant and the plaintiff."

Since it appears that plaintiff's claim is without substance, as it relates to breach of a contractual obligation, and is based upon a meaningless bookkeeping entry, we cannot say that the trial court erred in its determination.

Affirmed.